Our second case on the call of the docket today is agenda number 15, case number 110-662, Simpkins v. CX Transportation. Counsel for the appellant? Is that the CX train? I suspect it's one of our competitors, Your Honor. Good morning. May it please the court. My name is Andrew Tauber, and I represent the defendant appellant, CSX Transportation, Inc. Plaintiff asks that this court recognize a novel duty that has no precedent in Illinois law. This court should decline plaintiff's invitation, reverse the decision below, and affirm the circuit court's dismissal of plaintiff's claim against CSX. The question before this court is whether an entity owes a duty of care to protect third parties against secondhand exposure to asbestos fibers. A clear majority of courts to have considered this question have rejected the duty that plaintiff urges here. The question has been considered by the high courts of eight other states. Six have refused to recognize the duty. The question has also been considered by three districts of the appellate court. The fifth district's decision below stands alone. The second district in Nelson and more recently the fourth district in Holmes have rejected the proposed duty. There is a good reason why this clear majority of courts in Illinois and elsewhere have rejected the duty. They understand that imposing such a duty would be bad public policy. Recognizing a duty to protect third parties from secondhand asbestos exposure would subject employers to unlimited liability to an indeterminate class of plaintiffs. It would, moreover, do so at considerable cost to the tort system and without achieving any corresponding safety benefit. A number of cases, the cases that you have alluded to, are those cases that predate foreseeability concepts as it applies? It's foreseeable now based upon what we know. The cases are mixed, Your Honor. If I understand Your Honor's question correctly, you're asking whether the cases that we have cited from the other states are dealing with the same time period as this case? Yes. Some do, some do not. And it's hard to categorize. Some courts have looked at the same time period as that issue here and have concluded that it was not foreseeable, such as the Holmes court in this state and some of the states that we cite, states in the other jurisdictions. Yet others have looked at activity that was predating the activity here and found that it was foreseeable. I believe the Olvo case in New Jersey is from that period. The Satterfield case from Tennessee is from the 1970s. I think it's important to recognize that when those other courts have looked and found this activity, that risk of injury to be foreseeable from such activity, they, like the Fifth District here below, did not look at the question of dosage but merely looked at whether the notion of secondhand exposure was known at the time. They did not consider whether it was known that it would be in sufficient quantities to cause injury. The Second District case, the State of Holmes. The Second District is the Nelson case and the Fourth District is Holmes, Your Honor. And what's the time period involved in that exposure? I truthfully do not remember the time period involved in Nelson, which was a premises liability case. However, the most recent decision from the Fourth District in Holmes involves exposure that is exactly the same time period at issue here. I believe in that case the secondhand exposure occurred up until 1963. In this case, the secondhand exposure, alleged secondhand exposure, continued up until 1964. Those were foreseeability cases and not duty cases? No. The question in Holmes was whether there was a duty. The court decided that there was. Duty comes from foreseeability. Yes. They engaged in a foreseeability analysis and based on that analysis, they concluded that the risk of injury from secondhand asbestos exposure was not foreseeable prior to 1965 because the evidence showed that that was the year in which there was the first documented report of injury from secondhand asbestos exposure. In that case, I believe, and in some of the others, the court engaged in that foreseeability analysis after trial, after evidence was presented, correct? That is true, Your Honor. Here we're at the pleading stage. That is correct, Your Honor. The allegations are made that this was foreseeable. Why is that not sufficient at least at this stage? Several reasons, Your Honor. This is a fact pleading state, not a notice pleading state, and the complaint contains no factual allegations that would support the conclusion that this risk was in fact foreseeable at the time. They do assert that it was foreseeable in a conclusory fashion, but there are no factual allegations to support that conclusion. Now, one might say we didn't challenge that at the trial level, and we did not. You can see that right now. And therefore, at most, plaintiffs should be given an opportunity to re-plead. However, leave to re-plead would be futile in this case. Plaintiffs understood that her allegations were insufficient, and in response to our motion to dismiss, offered evidence at the circuit court to bolster her foreseeability allegations. We cite the pages in our brief. I can get the sites for you in a moment. In what way? I'm sorry? How was that done? I'm sorry. We fought our motion to dismiss. In connection with the opposition to that motion, they tendered approximately 100 pages of evidence, which appears, if you give me just a second, I can give you the citation. I apologize, Your Honor. It's taking me a moment. It was concerned procedurally. They attached an affidavit and numerous documents to their opposition to the motion to dismiss. They relied on that evidence in the circuit court. They relied on that evidence again in the Fifth District and have cited it yet again in this court and described that evidence as uncontested. But that uncontested evidence that was proffered by the plaintiff shows that there were no reported injuries from secondhand exposure to asbestos until 1964, which is the year that Mr. Simpkins left CSX's employee, and further show that injuries from secondhand exposure to asbestos were considered medical curiosities as late as 1979. The plaintiff would be a stop from ignoring that evidence were she given leave to replead. And I note that the Fourth District in the Holmes case, which, as you correctly note, was after trial and not on the pleadings, considered much of that very same evidence that plaintiff proffered here. And having considered that evidence, the Fourth District concluded that it was not foreseeable. At page, the slip-off pages 9 to 10 of the Holmes decision, the Fourth District concluded, after having reviewed this evidence, that it was not reasonably foreseeable that an employee working in the confined spaces of an asbestos dust-producing factory would leave that space, travel through the fresh air of the outside world, and then expose those inside the home to whatever amount of dust remained on his clothing at levels causing an asbestos-related malady. So to tie back to the first Justice's question, I think the key is when courts look at the question of foreseeability, they might be inclined to find foreseeability if they only look at the question, was it foreseeable whether dust would or would not be transferred home? But that is not the relevant question. The relevant question is whether dust would be transferred home in quantities sufficient to cause disease. And as soon as one looks at that, the relevant question, the courts unanimously conclude no, it was not foreseeable as of the relevant time period here, because there were no reports of injuries until 1964. That was the first report of injury from secondhand exposure. And I think the first epidemiological study showing such injury as found by the Fourth District in Holmes was 1965. The exposure in this case ended in October of 1964. So it simply was not reasonably foreseeable at the time to CSX that injury might result from exposure to secondhand asbestos fibers. Counsel, why is it not fair to say that that fact question that you assert is inconclusive? Why isn't that a fact issue to be left for an evidentiary matter? Perhaps I misspoke. I don't concede that it's inconclusive. I think it's absolutely conclusive that it was not foreseeable at the time. Right. And I think the evidence that – If that's the word I use, then I misspoke. I mean, I think you're asserting that there's just no doubt about it. The evidence that plaintiff has presented to the circuit court, relied on in the Fifth District, and again relies on in this court, shows that it was not foreseeable. If there was no reported injuries before 1964, as her uncontested evidence shows, it would be impossible for an employer at that point to have foreseen injury. And again, her evidence shows that as late as 1979, which is 15 years after the alleged exposure here, such injuries were still considered medical curiosities. So though under procedural posture, perhaps plaintiff might normally be given leave to re-plead, I think here such leave would be futile because there simply would not be the facts that would allow her to plead sufficiently that it was a foreseeable injury. All right. Thank you. The – as I say, the policy considerations weigh against this, but there's another reason why this Court should reject plaintiff's invitation to adopt this novel duty, and that is because it is contrary to this Court's precedent. In Kirk, Widlowski, Hellam, and Tedrick, this Court refused to recognize a duty to third parties even when the risk of harm was foreseeable and even when the third party was a close family member. There is no need for this Court to deviate from its longstanding precedent simply to ensure that asbestos – deserving asbestos plaintiffs receive compensation. As this case demonstrates, asbestos plaintiffs are already able to pursue claims against the manufacturers of asbestos products and against those entities that expose them directly to asbestos. Plaintiff named 73 defendants in this case. Plaintiff will still be able to pursue claims against 71 of those defendants even if this Court rejects the duty that she asked it to recognize today. Accordingly, we would suggest that this Court should reject the duty. As this Court noted in Widlowski, whether a duty exists depends on the circumstances of the case. One of the key circumstances of this case is that it involves asbestos. As this Court recognized in Thacker and again in Nolan, asbestos litigation poses unique problems. Those unique problems arise in part from the fact that asbestos fibers are generally indistinguishable from one another even under microscopic examination. Because it is impossible to identify the source of an asbestos fiber, an asbestos plaintiff, not knowing the source of the fiber that injured him or her, will typically name scores of defendants. This phenomenon is unique to asbestos litigation. There is no other type of litigation in which plaintiffs routinely name so many defendants. Of the scores of defendants typically named in each asbestos suit, many bear at most only slight responsibility for the plaintiff's exposure. But because an asbestos plaintiff's injuries are likely very large and because each defendant faces the threat of joint liability for all of the plaintiff's damages, no matter how slight that defendant's contribution, if any, to the plaintiff's injury, each defendant in an asbestos case is under tremendous pressure to settle, regardless of the merits of the case. If this Court were to recognize secondhand exposure claims, asbestos plaintiffs would be able to name even more defendants than they have until now, and those additional plaintiffs would be under extraordinary pressure to settle, regardless of the merits of the case. This very case illustrates what will happen if secondhand exposure cases are allowed to proceed. The decedent, Ms. Simpkins, died of lung cancer after having smoked a pack and a half of cigarettes daily for 41 years. Not only was she a heavy smoker, but she herself was directly exposed to asbestos, both during the course of her employment and during the course of non-occupational activities such as home and automotive repair. Despite these undisputed facts, plaintiff seeks to hold CSX responsible for Ms. Simpkins' lung cancer. Now, CSX denies any responsibility for her illness, but even if one assumes for purposes of argument that CSX bears some small responsibility, its responsibility is surely minuscule compared to that of Simpkins' own employers and those who manufactured the asbestos products to which she was directly exposed during home and automotive repairs. Nevertheless, if this Court were to recognize the duty that plaintiff seeks, CSX will, given the rules on joint liability, be put to the unfair choice of either risking a massive verdict or paying to settle a case with little or no merit. And, of course, there is no guarantee that plaintiff would be willing to settle with CSX. Having already applied for compensation from several bankruptcy trusts and having apparently obtained several settlements with product manufacturers, plaintiff could decide to roll the dice in the hope of getting a large payout from what she perceives to be a solvent and deep-pocketed defendant. Either way, whether she would settle or not, the net effect would be a tremendously distorted tort system in which liability is largely divorced from culpability. That is, as this Court recognized in Smith, bad public policy and counsels strongly against recognition of the duty the plaintiff urges here. A primary goal of tort law is to increase public safety by deterring dangerous conduct, but imposing a duty to protect third parties against second-hand asbestos exposure would not achieve any safety benefits. Imposing the proposed duty now, 50 years after the conduct at issue, could not possibly alter CSX's historic conduct or that of any other employer. There is quite literally nothing that CSX or any employer could do now to retroactively conform its past behavior to the new duty that plaintiff seeks. And imposing a new duty now would also have no future safety benefits. OSHA has strictly regulated the use of asbestos since 1972. As a result, asbestos is rarely used anymore. And if a particular employer does continue to use asbestos in the workplace, any precautions that that employer would take in response to the new duty that plaintiff proposes will have already been taken in response to the OSHA regulations. This Court recognized in Smith that when considering whether to impose, sorry, when this, in Smith, when considering whether to impose market share liability, this Court recognized that it is, I quote, unlikely that an overall safety incentive could result by imposing liability 40 years after the undesirable occurred and long after the offending product was removed from the market. Now, realizing that the imposition of a new duty would not actually protect anyone against secondhand exposure to asbestos, plaintiff offers two alternative justifications, the need to compensate victims and the need to protect against exposure to substances other than asbestos. Neither justification is persuasive. Plaintiff argues that imposition of the duty is necessary to ensure compensation, but clearly that is not the case. As demonstrated by Plaintiff's 73 defendant complaint, and by the settlements she has already apparently secured, it's not necessary to have this new duty. And plaintiff argues then, well, this case is not really about asbestos, but about dangerous substances generally. Yet, with the exception of the Doe case in Maryland, which involved HIV and in which the Court held there was no duty, we are not aware of any case in any jurisdiction involving any substance other than asbestos where a secondhand exposure claim has been alleged or recognized. This is not a coincidence. Plaintiffs have brought secondhand exposure claims in asbestos cases because they are seeking solvent depocketed defendants and because asbestos fibers cannot be traced to a particular source. The fact that both induces and enables asbestos plaintiffs, such as plaintiff here, to name scores of defendants. Rather than enhance safety by altering employer's conduct, imposing the duty that plaintiff proposes would merely expand liability and unnecessarily enable plaintiffs to coerce settlements from peripheral defendants, such as CSX, who almost certainly bear little or no responsibility for the injury a plaintiff alleges. The Fifth District erred in placing undue emphasis on foreseeability, ignoring this Court's admonition in Kunis and Renslow that foreseeability is an altogether inadequate basis for resolving the duty issue. But even if foreseeability, it was proper to emphasize foreseeability above all else, the Fifth District's analysis is flawed. As I explained earlier, it did not look to the risk of injury, merely as to whether it was foreseeable that asbestos fibers might be brought home. But that's just not the relevant question. The question is whether it was reasonably foreseeable that injury would result. The Fifth District completely ignored that question, and as I've explained, plaintiff's complaint is silent. Now, this Court may affirm on any grounds plainly on the record, and the inadequacy of this complaint is plain on the record. Now, I understand that when this Court granted CSX's motion for leave to appeal, it's likely wanting to decide the issue generally as a matter of Illinois law and not the mere sufficiency of this particular complaint. But the inadequacy of the complaint is indicative of the lack of foreseeability during the relevant time period, as concluded by the Fourth District in its recent decision in Holmes. In Kirk, Widlowski, and Pelham, this Court warned against extending liability to an unknown and indeterminate class of plaintiffs. That is precisely what would happen here if this duty was recognized. Your Honor, I recognize my time has expired. Thank you, Mr. Tauber, Counsel for the Appellee. Good morning, Your Honors, Timmy, and on behalf of the plaintiff, and my co-counselor here, John Cooney and Ted Gennarius, who have been assisting me in this appeal. Let me begin by setting the record straight. We are not asking this Court to adopt a new duty. We are not asking this Court to adopt a novel duty. We do not consider Mrs. Simpkins to be a third party. She was exposed to asbestos by the failure of the defendant to control its release and spread where it was used. If it had gotten out through the windows, in the air, and she had become exposed, I don't think there would be any question that there would be a duty owed. Donaldson v. CIPS at this Court decided where that case dealt with breach of duty, not whether there was a duty. Duty was a given in that case where when they were doing an environmental cleanup, it got in the air and exposed children in that area to known carcinogens. Adams, another case we cite, where people's gas was held responsible because gas got out from where there was a connector and exposed people. They were being held liable in terms of a duty because they were in the best position to control it. That's what this case is about. The predecessor of the railroad, when he was working there between 1958 and 1964, had a choice. Use asbestos products, and if you do use them, control their release. They allowed this to be released from the premises so it got out into the world. The medium for that release was Mr. Simpkins. This is not a case like in Kirk. This is not a case like in the Simmons case that this Court dealt with last term where you're talking about a third party's negligent conduct causing an injury and whether or not there's some special relationship needed, like in Marshall v. Burger King, to establish a duty. This is a case where the carrier, the mechanism by which that asbestos was released, was Mr. Simpkins. Counsel, perhaps I'm confused, but from reading the briefs, I thought the focus was on that Mrs. Simpkins was a family member of Mr. Simpkins, and it seemed to me that the focus was on the danger to the family. You seem to be discussing here a much wider range. In other words, it would be anybody. It doesn't have to be a family member. It could be his barber if he went after work to get a haircut. Justice Garland, that's a good point. The Fifth District narrowed it to just Mrs. Simpkins and then also left open the possibility of family members. And that's all we need to affirm. But the defendant is raising the possibility that this is going to be a duty to the world and that the number of plaintiffs are indeterminate. And that is just not true. What we're talking about here is a situation where someone comes into contact with asbestos, as this Court requires in Thacker, on a regular basis, they're approximately close to it, and they're frequently exposed to it. That's what would have to be proved. But we welcome that opportunity to prove those facts. As Justice Tice pointed out, we haven't even gotten past the pleading stage. We haven't been given the opportunity to prove whether or not it was reasonably foreseeable in 1964 for them to imagine that this injury could have occurred to family members. If there had been a cafe directly across the street and they went in there on a regular basis and they had the clothing and this person was there every day, could that create a duty? Possibly. But in this case, it was limited to Mrs. Simpkins and possible other family members. And if you look at the duty that's been grappled with, and I know in Marshall v. Burger King, a point that was made by this Court in that case was we are not talking yet about breach. Again, the only issue that was attacked in the 2615 motion was duty. We are not talking about foreseeability yet, whether there was a breach. Counsel was talking about all these other causes, cigarette smoking. He's giving the approximate cause. That wasn't raised. That brings up another question. Yes. This was a 2615 motion. Yes. My understanding of 2615 motions is it rises or falls on the complaint, on the face of the complaint. It does. And then we're talking about affidavits and attachments and the like. How does this all figure out in this analysis? Well, the circuit court and the appellate court got it right. They didn't consider it in terms of the duty issue. The appellate court specifically said there was a lot of evidence put into this record with respect to foreseeability. But that's not what we look at. We look at the complaint only. I think at that point the plaintiff is thinking, well, if that's going to become an issue, I'm going to show them. But in a 2615 context, you're absolutely right. That was irrelevant. And the 5th District noted that. We haven't had the opportunity to show yet whether it was reasonably foreseeable. In the Holmes case, which was a 4th District case, that involved an exposure in about 1962. Now, the court held that there was no breach of duty because they found, as a matter of law, it was not reasonably foreseeable in 1962, pointing to 1964 articles saying it wasn't known that. By the way, I happen to agree with the dissent in that case, Justice Knapp, who said the literature in the 30s was replete with information that dealt with exposure of family members when workers were coming home with pesticides, with lead, with all sorts of hazardous substances. And what I think defines this issue, which the defendant wants to avoid by talking about proximate cause and by talking about breach of foreseeability and breach of duty, is the fact that asbestos is a hazardous material. I don't think there's any question about it. When you're dealing with a hazardous material, you take on a responsibility to make sure it doesn't affect others. In fact, I thought the defendants put it very well in their brief when they were saying, this court has steadfastly refused to say there is a duty unless the party stood in such a relationship where one party is obligated to conform to a certain standard of conduct for the benefit of the other. And we submit that that standard of conduct is and has been recognized by this court repeatedly, when you're dealing with a hazardous substance, you have a responsibility to make sure it doesn't get released. You mentioned studies that have been or reports that have been made. Are you equating reports or positions taken by experts in this field equivalent to a study that didn't come out until 1965? Your Honor, I think there's two questions. There was a study that came out, as you said, in 1964-65, but there had been repeated studies prior to that by industrial hygienists that said as early as 1913. Positions or studies? Well, I guess positions based upon the studies. I think they were epidemiology studies by physicians, by industrial hygienists, which said that when workers are exposed to dangerous substance at work, you should take precautions such as having them change their clothes, shower, isolate, contain. That's the responsibility, and asbestos just fits in all the categories. So you're saying that 1964-65 is not the date we should look at, but we should look at the date of when anyone took a position after a study that predated that period. Absolutely, Your Honor, and again to Justice Tice's point, when we have the opportunity to do that, we will present a full record. We have not had that opportunity to prove that prior to 1964, it was well known that these hazardous substances can cause lethal consequences to people that come in contact with them. Right now we're talking about do we have a duty, and as this Court has said repeatedly, in Iceberg v. Gross, in Marshall v. Burger King, in Donaldson v. CIPS, there is a duty to protect people from known hazardous substances when you are in control. And who is the best person to control the release? Counsel just talked about all these manufacturers, these 70 people that were named, and said we were just a small part. Well, I beg to differ. Who controlled whether or not that asbestos got out of that plant? Through the chimney, through the windows, through the workers? This defendant. Mr. Eaton, may I direct you back to the complaint? As we've said, this is at 2615, and it seems to me that's where we should start and where we should end. The duty as described in the complaint is this. Defendant had a duty to use ordinary care to see that the premises at which plaintiff's family member were rightly present were in a reasonably safe condition for use by the plaintiff's family member, and to use ordinary care for the safety of the plaintiff and the plaintiff's family member in conducting any operations or activities on said premises. That certainly sounds like premises liability. It does and it's not. Explain why, please. First of all, Your Honor, it depends. These cases that counsel decided from other states and from Illinois, the second district case and the Nelson case, the only issue before them was whether or not there was a duty by a premises owner to a third party who was off the premises. And the court said no. And they were quick to add in that opinion, we are not dealing with any other allegations here of duty. Strictly relating to premises liability, which by the way, some of the other jurisdictions have gone that route as well. Other cases, the Georgia case, dealt with whether or not there was liability to a third party non-employee. That's the way the question was framed. The way we are framing the question and the way we did below was that there was a duty to protect anyone that might come in contact with that hazardous substance, whether it be through workers, whether it be through a failure to warn. It's a duty to contain it, not release it. And we were simply describing the circumstances under which this duty was breached. It was on a premises, they didn't handle the material safely because they allowed it to be released. So we have to read between the lines of this paragraph three. I wouldn't say read between the lines. I think if you go on in the complaint, we say specifically that they breached their duty by failing to provide either safeguards so it didn't leave the premises or secondly, that they failed to warn. This is not a premises liability case. We are bringing it under ordinary negligence concept, which by the way is what the Fifth District said. The Fifth District said we are dealing here with ordinary negligence concepts of where someone takes on the responsibility of using the hazardous substance and fails to contain it and actually harm somebody else. We are not, I think what the defendants are trying to do here is put us in a box. They're trying to say, well, there's no duty, it's a premises case. There's no duty, it's an employer-employee case. There's no duty because it's a third party case, as this court dealt with in Tedrick and Kirk and others. She's not a third party. She was directly harmed. The box that we want to fit in is the box of a driver driving down the street who hits an innocent pedestrian. Was there a special relationship? No. Was there a preexisting relationship? No. Did he even know who that person he hit? No. But he had a duty to refrain from hitting someone due to his negligence. That is a situation that we have here. And this court has repeatedly found that when parties stand in relationship to one another where someone has an obligation, quoting again from their brief, to conform their standard of conduct to a certain form, so someone else is not harmed. That's what we're dealing with here. Mrs. Simpkins is not, we're not seeking a derivative duty based upon her husband's employment status. We are not seeking a derivative duty based upon transferred negligence. We are seeking a direct duty to her to make sure that when you're using a hazardous substance, it does not get released it does not escape, and again, in the Donaldson case, the question of duty was not even challenged. The defendant accepted that when they were involved in an environmental cleanup and something escapes, that they're responsible, but then they allege we didn't breach our duty because we did what was necessary to protect that from somebody who saw it the other way. We are dealing here, plain and simple, with a duty. And then once you establish the fact that there's this relationship with this victim, in this case the plaintiff, this court has looked, as a matter of public policy, at the other factors. They look at whether or not it's foreseeable in deciding duty, and I don't think there's any question here that it would be contaminated product on their clothing is going to come in contact with people. And then you decide whether or not there's a breach of that foreseeability, that's another issue. Likelihood of injury. Is there any question here in looking at that duty question that the injury here is serious? Is there any question that exposure to asbestos is serious? Magnitude of the burden to protect against this. What imposition are we imposing upon this person who's using hazardous substance? We are not saying they have to follow people outside of the plant to make sure they don't get on an airplane. We are not saying that they don't have to follow them so they don't go to the local legion hall and expose others. What we are saying is contain it while it's there in your premises. Make them change clothes. Make them shower. Because that's how you contain it. So there will be no exposure to anyone, let alone the entire world. If it doesn't leave the premises, you don't have to even get into the issue of these indeterminate number of plaintiffs. That's the burden. The consequences of imposing the burden, which is the fourth criteria that this court looks at. This court would be putting the responsibility on the party that control the release of that hazardous substance. That's the consequence. If you say there is no duty, then what you are saying is there's no consequence if you fail to prevent the spread of the release of a hazardous substance. I do not believe that that's what this court would want to do and send the message that there are no consequences. They've already said it's not a significant burden. Because they say, well, we don't use asbestos anymore. The burden that they're talking about that I heard counsel talk about today is having to defend in asbestos cases. Well, the litigation burden is not what this court has looked at. They look at the burden on the defendant at the time that the activity occurred. So if this means there's going to be a few more cases. And by the way, this secondhand exposure, and I would like to disavow the term secondhand, because in my opinion it's direct. If you're Mrs. Simpkins, you certainly believe it's direct. But this notion has been around for many, many years. We've cited in our brief in the 70s when they were talking about multi-district litigation. They've talked about exposure to family members. This is not a novel concept. This is not a new concept. Is there any other case out there like this one? I mean, any other reported case? Not talking about what's in the pipeline. Well, there's the Satterfield case in Tennessee, which the 5th District had cited. In Illinois. Oh, in Illinois. Your Honor, other than the Nelson case, which was decided in the 2nd District on premises liability, and other than the Holmes case, which was decided by the 4th District after there had been a complete trial, there's no other case that I'm aware of that has had to deal with this issue. But again, I think this Court has repeatedly held in cases where they're dealing with hazardous substances and, you know, substitute the word, counsel wants to make this a trial on asbestos, how about pesticides? If you're using pesticides, which I think is a known carcinogen, and you allow it to escape your premises and expose other people, I don't think there's any question there would be a duty. Donaldson, there was no question when known carcinogens were released in the air. So this concept has been in Illinois jurisprudence previously. In this case, the only median of carrying it outside the premises was a person, not air or water. I see my time's exposed. Thank you. Thank you, Mr. Eaton. Mr. Tauber. Thank you. Mr. Eaton says that Ms. Simpkins is not a third party and they're not relying on the transferred negligence theory. However, in the Circuit Court and in the 5th District, that was their primary emphasis. Mr. Eaton says, well, negligent driver owes a duty to a pedestrian, why not owe a duty to Ms. Simpkins? But that ignores the policy considerations. In a pedestrian driver case, the plaintiff is readily identifiable, namely the injured pedestrian, and the defendant is readily identifiable, namely the driver. And there's just one of each. It might be two, perhaps, but it's very limited. That is very, very different than the situation in asbestos cases where, as we see here, scores of defendants are named. And that difference leads to a series of policy considerations that lead to a different result. The large number of defendants possibly liable for the entirety of massive damages, even though they have only limited responsibility, leads to a settlement dynamic that distorts the tort system. Counsel for plaintiff also points to Donaldson. The same thing there. Counsel very, very steadfastly refuses to use the word asbestos and talks about toxins and dangerous substances. But this is an asbestos case. In Donaldson, there were two defendants, the owner of the premises and the contractor who did the cleanup on the premises. That fact leads to different policy considerations and should lead to a different result here. Now, this is an asbestos case. Nolan, this court, said there's no special law of asbestos cases. That's certainly true. But it is the application of generally applicable Illinois tort law that leads to the conclusion that there is no duty here. The touchstone of duty analysis is the party's relationship. Plaintiff has conceded that Ms. Simpkins had no direct relationship to CSX and was linked only through an intermediary. The four policy factors that should be considered when evaluating whether a given relationship is sufficient to support a duty also leads to the conclusion that no duty is owed here. As reflected in Kirk, Widlowski, and Pelham and Tedrick, this court has rightly been reluctant to recognize a duty to third parties, especially when the policy considerations lean the other way. So here, if you look at those policy considerations, the injury was not foreseeable at the relevant time. Yes, the fact that dust might be transferred home was perhaps foreseeable, but that does not mean that the risk of injury was foreseeable. Second, imposing the duty now simply would not protect anyone against secondhand asbestos exposure. It can't change what happened 50 years ago, and now it's redundant of what OSHA has already done. Third, the duty would impose a significant burden. Now, plaintiff says litigation burden doesn't matter, but it does matter. In both Kirk and Widlowski, this court held that there was no duty owed, notwithstanding the fact that the same precautions that would have protected the third party plaintiff would also have protected the primary person involved. And moreover, this court in Kirk rejected the dissent's suggestion that litigation burden should be ignored and recognized that that is, in fact, a relevant policy consideration. When considering the implications for the court system and what the Madison County Courts will have to do, surely the amount of litigation and the need to separate the wheat from the chaff is a significant consideration that should be taken into account when deciding whether there is or is not a burden. And finally, the consequences of placing the burden on employers. The settlement dynamic is real and deleterious, and that is what separates this from the pedestrian case or the neighborhood pollution case where you have one readily identifiable defendant. Here, when you have multiple defendants, there's a much, much greater pressure on the individual defendant to settle because the difference between what they would have to pay on settlement and what they would pay if held liable at trial is far, far greater than when you only have one defendant involved. But how is that a legal factor on the sufficiency of this complaint? It's a legal factor because when considering whether the court will recognize a duty, in a particular instance, one looks at the party's relationship and also policy considerations. And if one can see that recognizing a duty would have terribly deleterious consequences for the tort system if it would divorce liability from culpability, that's a relevant consideration when determining whether this duty should be recognized in the state. Again, I point back to Smith. This court at the time was not considering duty, it was considering market share liability, but nonetheless realized that any tort regime that divorces liability from culpability is a bad tort regime and should be avoided. In that case, this court decided not to adopt the market share liability doctrine for that reason and I suggest that very same sort of consideration should leave the court here, in this case, to reject the duty the plaintiff asserts. There are no other questions, Your Honor? Thank you, Mr. Tolbert. Case number 110-662, Simpkins v. CX, is taken under advisement as agenda number 15. Thank you very much.